IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **VILLAGE OF SHILOH,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:21-CV-807-MAB |
| | ) |
| **NETFLIX, INC.,** | ) |
| **DIRECTV, LLC,** | ) |
| **DISH NETWORK CORP.,** | ) |
| **DISH NETWORK, LLC,** | ) |
| **HULU, LLC, and** | ) |
| **DISNEY PLATFORM DISTRIBUTION,** | ) |
| **INC.,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This case is currently before the Court on a motion to remand filed by Plaintiff, the Village of Shiloh, Illinois (Doc. 45). Defendants filed a response in opposition to the motion (Doc. 58). The Village of Shiloh did not file a reply. For the reasons explained in this Order, the motion is granted.

### BACKGROUND

The Illinois Cable and Video Competition Law of 2007, 220 ILL. COMP. STAT. 5/21-100, *et seq.* ("the Act" or the "Illinois law"), requires providers of "cable service or video service" to obtain authorization to provide their services and pay fees to the local cities, villages, towns, and counties in which they do business and whose public rights-of-way the providers utilize in delivering their services. Many states have similar laws, and the

question being posed to courts across the country is whether streaming platforms, such as Netflix and Hulu, which came into being after the laws were enacted are subject to the laws and should be paying a fair share of fees.[1]

On June 9, 2021, the City of East St. Louis, Illinois filed an original action in this district against a number of streaming platforms alleging they provide "video service" within the meaning of the Act but have failed to comply with its requirements, namely that they pay the required fees to local governments. *City of East St. Louis v. Netflix, Inc., et al.*, SDIL Case No. 21-cv-561-MAB, Doc. 1. The City of East St. Louis seeks declaratory and injunctive relief and damages relating to Defendants' failure to pay fees under the Act on behalf of a putative class of all local units of government in which Defendants provide video service.

Five days later, the Village of Shiloh, Illinois filed a substantially similar putative class action in the Circuit Court for the Twentieth Judicial Circuit in St. Clair County, Illinois (Doc. 1-1). Defendant Netflix removed the case to this district on July 15, 2021, asserting jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA") (Doc. 1). All other Defendants have since joined in or consented to removal (Docs. 6, 7,

---

[1] *See, e.g., City of Fishers v. Netflix, Inc.*, 5 F.4th 750 (7th Cir. 2021) (Indiana's Video Service Franchises Act, Ind. Code §§ 8-1-34-1, *et seq*); *City of New Boston v. Netflix, Inc.*, No. 5:20-CV-00135-RWS, - F.Supp.3d - , 2021 WL 4771537 (E.D. Tex. Sept. 30, 2021) (Texas Video Services Providers Act); *City of Ashdown v. Netflix, Inc.*, No. 4:20-cv-4113, 2021 WL 4497855 (W.D. Ark. Sept. 30, 2021) (Arkansas Video Service Act); *City of Lancaster v. Netflix*, No. 21STCV01881, 2021 WL 4470939, at *1 (Cal. Super. Ct. Sep. 20, 2021) (California Digital Infrastructure and Video Competition Act of 2006); *City of Reno, Nevada v. Netflix, Inc.*, No. 320-CV-9499-MMD-WGC, 2021 WL 4037491, at *1 (D. Nev. Sept. 3, 2021) (Nevada Video Service Law, NEV. REV. STAT. §§ 711.020, *et seq.*); *Gwinnett Cty., Georgia v. Netflix, Inc.*, No. 1:21-CV-21-MLB, 2021 WL 3418083, at *1 (N.D. Ga. Aug. 5, 2021) (Georgia Consumer Choice for Television Act, GA. CODE ANN. § 36-76-1, *et seq.*); *City of Creve Coeur v. DIRECTV, LLC*, No. 4:18cv1453, 2019 WL 3604631 (E.D. Mo. Aug. 6, 2019) (Missouri Video Services Providers Act, MO. REV. STAT. § 67.2675, *et seq.*);

11). Like the East St. Louis case, here the Village alleges that Defendants offer "video service" within the meaning of the Act but have failed to pay the required fees to local governments (Doc. 1-1). The Village seeks declaratory and injunctive relief and damages relating to Defendants' failure to pay the fees under the Act on behalf of a putative class of all local units of government in which Defendants provide video service (Doc. 1-1).

The Village timely filed the motion to remand that is presently before the Court (Doc. 45, Doc. 46). The Village does not dispute that the elements necessary for removal under CAFA are satisfied (the amount in controversy exceeds $5 million, there is minimal diversity of citizenship, and there are more than 100 putative class members) or that this Court's subject matter jurisdiction over the case is secure (*see* Docs. 45, 46). 28 U.S.C. § 1332(d). The Village instead argues that the Court should remand this case because under comity principles, this matter is more appropriately decided by the Illinois state courts (Doc. 45, Doc. 46).

## LEGAL STANDARD

"Federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction given them." *City of Fishers, Indiana v. DIRECTV*, 5 F.4th 750, 752–53 (7th Cir. 2021) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)). "Because a decision to abstain pushes against this obligation, '[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.'" *City of Fishers*, 5 F.4th at 753 (quoting *Colo. River*, 424 U.S. at 813).

A judicially created doctrine known as comity abstention "counsels lower federal courts to resist engagement in certain cases falling within their jurisdiction," particularly

cases challenging matters of "state taxation of commercial activity" and "revenue collection," which are understood to be core functions of state governments. *Levin v. Commerce Energy, Inc.*, 560 U.S. 413, 421 (2010); *City of Fishers*, 5 F.4th at 753, 759. The comity doctrine reflects "proper respect for state functions" and a "proper reluctance to interfere by prevention with the fiscal operations of the state governments . . . in all cases where the federal rights of the persons could otherwise be preserved unimpaired." *Levin*, 560 U.S. at 421, 422 (citations omitted); *City of Fishers*, 5 F.4th at 753, 754.

This principle was partially codified by the Tax Injunction Act ("TIA"), which provides that a district court "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341; *Levin*, 560 U.S. at 424 (citation omitted). But alongside the TIA sits the "more embracive" doctrine of comity, which "restrains federal courts from entertaining claims for relief that risk disrupting state tax administration," has "continuing sway . . . independent of the [TIA]," and bars some cases not barred by the TIA. *Levin*, 560 U.S. at 417, 423-24; *see also A.F. Moore & Assocs., Inc. v. Pappas*, 948 F.3d 889, 896 (7th Cir.), *cert. denied sub nom. Kaegi v. A.F. Moore & Assocs., Inc.*, 141 S. Ct. 865 (2020), *and cert. denied,* 141 S. Ct. 866 (2020) ("Comity is a doctrine of abstention, rather than a jurisdictional bar, but in the state-taxation context it operates similarly to the Tax Injunction Act.").

"[C]omity-based abstention enjoys deep roots in the Supreme Court's jurisprudence"—for over 150 years, the Supreme Court has underscored the need for federal courts to avoid interfering with state and municipal fiscal operations. *City of*

*Fishers*, 5 F.4th at 753 (citing *Dows v. City of Chicago*, 78 U.S. 108, 110 (1870); *Boise Artesian Hot & Cold-Water Co. v. Boise City*, 213 U.S. 276, 282, 29 S. Ct. 426, 428 (1909) ("An examination of the decisions of this court shows that a proper reluctance to interfere by prevention with the fiscal operations of the state governments has caused it to refrain from so doing in all cases where the Federal rights of the persons could otherwise be preserved unimpaired."); *Fair Assessment in Real Estate Ass'n, Inc. v. McNary*, 454 U.S. 100, 116 (1981)).

In *Levin v. Commerce Energy, Inc.*, the Supreme Court made clear that the comity doctrine serves to "restrain[ ] federal courts from entertaining claims for relief that risk disrupting state tax administration." 560 U.S. at 417, 130 S. Ct. 2323. The Court reasoned that "it is upon taxation that the several States chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible." *Id.* at 421-22, 130 S. Ct. 2323 (quoting *Dows*, 11 Wall. 108, 110, 20 L.Ed. 65 (1871) (alterations omitted)). The Court cited a "confluence of factors" in reaching its decision that comity warranted abstention under the facts before it. *Levin*, 560 U.S. at 431, 130 S. Ct. at 2336.

The first factor is whether the subject of an action is one over which a state enjoys "wide regulatory latitude." *City of Fishers*, 5 F.4th at 756 (citing *Levin*, 560 U.S. at 431–32). The second factor is whether a party is seeking federal aid to improve their competitive position. *City of Fishers*, 5 F.4th at 756 (citing *Levin*, 560 U.S. at 431–32). And the third factor is whether a state court is better positioned to resolve the dispute due to familiarity with

"state legislative preferences" and because the Tax Injunction Act poses no constraints. *City of Fishers*, 5 F.4th at 756 (citing *Levin*, 560 U.S. at 431–32).[2]

As Defendants repeatedly emphasized, remand based on the comity abstention principles at the heart of *Levin* is discretionary (Doc. 58, pp. 11, 18-19). *See City of Fishers*, 5 F.4th at 755 (citing *Hammer v. United States Dep't of Health & Hum. Servs.*, 905 F.3d 517, 530 (7th Cir. 2018)) (reviewing district court's decision to abstain from exercising its jurisdiction based on the *Levin* factors for an abuse of discretion). *See also Levin*, 560 U.S. at 432 ("Comity . . . is a prudential doctrine.").

## DISCUSSION

As the Court previously noted, this is not the first case of its kind in which municipalities have sued streaming platforms for failure to pay franchise fees. Indeed, many other federal courts, including the Seventh Circuit Court of Appeals, have already been asked the question being posed here—whether the Court should decline to exercise federal jurisdiction and thus remand the case back to state court under the doctrine of comity abstention because the case involves local revenue collection and taxation under a specific state's regulatory scheme. The courts that have been asked this question have all favored remand. *City of Fishers v. Netflix, Inc.*, 501 F. Supp. 3d 653, 2020 WL 6778426

---

[2] The Tax Injunction Act ("TIA") provides that a district court "shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State." 28 U.S.C. § 1341. "In practice, then, [it] ensures that challenges to state taxes are litigated, if at all, in the state courts." *City of Fishers*, 5 F.4th at 753. When it comes to taxes and revenue authorized by state statutes, "a federal court's obligation to stay its hand comes most often from the [TIA.]" *Id*. The TIA does not, however, bar federal adjudication of collection suits initiated by states of municipalities. *Id*. Consequently, neither party argues that the TIA completely defeats federal jurisdiction (*see* Docs. 46, 58).

(S.D. Ind. Nov. 18, 2020) (remanding case based on comity abstention where streaming services were sued for their failure to pay franchise fees to Indiana municipalities under Indiana's Video Service Franchises Act, Ind. Code §§ 8-1-34-1, *et seq.*), *affirmed* 5 F.4th 750 (7th Cir. 2021). *See also City of Creve Coeur v. DIRECTV, LLC*, No. 4:18-cv-1453, 2019 WL 3604631 (E.D. Mo. Aug. 6, 2019) (remanding case based on comity abstention where streaming services were sued for their failure to pay fees under Missouri's Video Services Providers Act, MO. REV. STAT. § 67.2675, *et seq.*), *leave to appeal denied* No. 19-8016, 2019 WL 7945996 (8th Cir. Sept. 12, 2019); *Gwinnett Cty., Georgia v. Netflix, Inc.*, No. 1:21-CV-21-MLB, 2021 WL 3418083 (N.D. Ga. Aug. 5, 2021) (remanding case based on comity abstention where streaming services were sued for their failure to pay fees under Georgia's Consumer Choice for Television Act, GA. CODE ANN. § 36-76-1, *et seq.*), *appeal docketed* Eleventh Circuit Case No. 21-CV-13111.

In *City of Fishers,* four cities in Indiana filed suit against DirecTV, Dish Network, Netflix, Hulu, and Disney DTC in Indiana state court based on the defendants' failure to pay franchise fees to Indiana municipalities under Indiana's Video Service Franchises Act, Ind. Code §§ 8-1-34-1, *et seq. City of Fishers*, 5 F.4th at 752. The defendants removed the case to federal court under the Class Action Fairness Act of 2005 and the plaintiffs (the cities) then sought remand, invoking the *Levin* comity abstention doctrine. *Id.* The district court agreed with the cities and remanded, and the decision was affirmed by the Seventh Circuit. *Id.*[3]

---

[3] Generally speaking, an order remanding a case to state court is not reviewable on appeal or otherwise (except if it was removed pursuant to 28 U.S.C. § 1442 or § 1443). *See* 28 U.S.C. § 1447(d). However,

In affirming the district court's remand order, the Court of Appeals made clear that careful consideration of the *Levin* factors was appropriate. As to the first *Levin* factor, the Seventh Circuit explained that the State of Indiana and its municipal governments have broad authority over utility and right-of-way regulation within the State. *City of Fishers*, 5 F. 4th at 756. And the Indiana statute was enacted to regulate video services in a way that benefits local governments. *Id.* Therefore, by asking the federal court to interpret the Indiana statute, the defendants sought to inject a federal court into matters affecting local revenue over which the State of Indiana and its municipalities enjoy wide regulatory latitude. *Id.*

With regard to the second *Levin* factor, the Seventh Circuit held the streaming platforms removed the case and oppose the cities' demand for fees as part of an attempt to maintain a competitive advantage over traditional cable providers, who have been paying the required fees for years. *City of Fishers*, 5 F.4th at 751, 756.

And as to the third *Levin* factor, the Seventh Circuit held that the Indiana courts were well-positioned to interpret the state's Video Service Franchises Act in order to adjudicate the cities' claims arising under the Act and to resolve the streaming platforms' defenses, including those defenses rooted in federal law. *City of Fishers*, 5 F.4th at 756, 757.

---

in *Quackenbush v. Allstate Insurance Co.*, the Supreme Court clarified that § 1447(d) does not preclude appellate jurisdiction over abstention-based remand orders and held that such orders are appealable under 28 U.S.C. § 1291. *See* 517 U.S. 706, 715, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). This exception carved out by *Quackenbush* thus provided the Seventh Circuit Court of Appeals the basis for which to review the district court's remand order on appeal. *See City of Fishers, Indiana*, 5 F.4th at 752.

Here, this Court sees no reason why the Seventh Circuit's analysis in *City of Fishers* does not also hold true. The Village seeks the same relief under Illinois law that the plaintiffs in *City of Fishers* sought under the related Indiana law (and the plaintiffs in *City of Creve Coeur* and *Gwinnett County* sought under the related Missouri and Georgia laws). Specifically, they all sought a declaration that streaming platforms are video service providers and therefore must pay a small percentage of their earnings to local units of government in which they do business. As to the first *Levin* factor, Defendants seek to inject a federal court into matters affecting local revenue over which the State of Illinois and its municipalities enjoy wide regulatory latitude. As to the second factor, Defendants claim they did not invoke federal court jurisdiction in the instant case to improve their competitive position, but rather to avoid duplicative litigation (Doc. 58, pp. 12–13). It may very well be true that in removing this case, the Defendants were trying to avoid duplicative litigation. But that does not negate the fact that they invoked federal court jurisdiction and a win for Defendants in this tribunal would improve their competitive position by allowing them to avoid the fees that traditional cable companies are forced to pay. As for the third *Levin* factor, Defendants argue that "the federal court is capable of deciding matters of state law when, as here, it has been asked to do so by a local government plaintiff." (Doc. 58, p. 13). But the question here is not whether this Court is capable of interpreting the Illinois statute. It is. Rather, the question is whether *in spite of* its capability to interpret the Illinois statute, this Court should abstain from doing so out of respect and deference for state sovereignty and the need to allow states to carry on their fiscal operations without interference from federal courts. *See Levin*, 560 U.S. at 421–

22; *City of Fishers*, 5 F.4th at 758 ("abstention doctrines reflect foundational features of our federal constitutional system, including respect for dual sovereignty and caution against interfering with traditional state functions, like taxation."). And in this instance, the answer is "yes," because this matter involves an interpretation of Illinois state law—specifically, certain provisions of the Illinois Cable and Video Competition Law of 2007—for which there is no existing state court guidance. But the Court must note that here this consideration is indeed mitigated by the fact that regardless of where this case is litigated, this Court will be called upon to resolve the issues of state law raised in the East St. Louis case involving this same controversy. *See City of East St. Louis v. Netflix, Inc., et al.*, SDIL Case No. 21-cv-561-MAB.

Defendants, however, oppose remand and make several arguments as to why the Court should exercise its discretion and deny remand. To begin with, Defendants suggest, but do not affirmatively assert, that when a case is properly removed under CAFA, federal courts can only remand the case based on the express exceptions set forth in the statute (i.e., the "local controversy" exception and the home-state exception) and lack the authority to remand the case based on non-statutory grounds, such as the comity abstention principles at the heart of *Levin* (Doc. 58, pp. 16–18). In *City of Fishers*, the Seventh Circuit gave a thorough explanation in dicta as to why this argument was unavailing but declined to make it a definitive holding because the defendants had waived the argument. *City of Fishers*, 5 F.4th at 758.[4] Defendants here have not offered

---

[4] Specifically, the Seventh Circuit acknowledged that the exceptions in CAFA allowing remand (such as the "local controversy" exception or home-state exception) reflect Congress's judgment that a class action

any argument that persuasively pushes back against the Seventh Circuit's explanation of how statutes conferring federal jurisdiction must still be considered in tandem with comity abstention principles, when appropriate (*see* Doc. 58, pp. 16–18).

Defendants also contend that because it was "a taxing authority," meaning the City of East St. Louis and the Village of Shiloh, who initiated suit to determine the proper interpretation and application of the Act, this case is different than all of the other taxpayer-initiated lawsuits in which comity abstention was warranted (Doc. 58, pp. 19–20). But this argument has also been rebuffed by the Seventh Circuit. *City of Fishers*, 5 F.4th 755. Specifically, the Seventh Circuit held that the fees at issue, which yield revenue for municipalities, much like a tax, could thus be understood as a tax for *Levin* purposes. *Id.* Therefore, "regardless of who brought the underlying suit, the district court's resolution of the merits issues will risk or result in federal court interference with the fiscal affairs of local government—the principal concern of *Levin*" because the district court's decision "will impact the cities' ability to generate revenue, either by permitting the collection of franchise fees or by cutting off a line of potential income." *Id.*; *see also Gwinnett Cty., Georgia v. Netflix, Inc.*, No. 1:21-CV-21-MLB, 2021 WL 3418083, at *6 (N.D.

---

with deep roots in a single state belongs in that state rather than a federal tribunal. *City of Fishers*, 5 F.4th at 758. But CAFA's exceptions to federal jurisdiction do not eliminate a federal court's "ability, if not obligation" to also consider the comity abstention principles at the heart of *Levin*. *Id*. In short, the Court explained that statutes conferring federal jurisdiction (such as CAFA) must still be considered with sensitivity to federal-state relations and wise judicial administration. *Id.*; *see also Saskatchewan Mut. Ins. Co. v. CE Design, Ltd.*, 865 F.3d 537, 542 (7th Cir. 2017) (noting that CAFA is a jurisdictional statute that must be read with "sensitivity to federal-state relations and wise judicial administration" and noting that it "seems to us neither sensitive nor wise for federal courts to insert themselves into litigation that has busied the Illinois and Saskatchewan courts for a considerable time.") (internal quotations omitted).

Ga. Aug. 5, 2021).

Defendants' remaining arguments all revolve around their attempt to distinguish the instant case from the *City of Fishers* by asserting that the Village is attempting to pursue unnecessary and duplicative "copycat litigation" in state court, and under these circumstances comity abstention is not warranted (Doc. 58). As previously mentioned, the East St. Louis case was filed in federal court while this case started in state court. Defendants argue that they removed this case in order to avoid duplicative litigation in two different forums (*see* Doc. 58). And now, the Village is trying to remand it back to state court, which would "guarantee" duplicative litigation of two almost identical class actions in two different forums (Doc. 58, p. 13). Defendants argue that the duty to avoid duplicative litigation outweighs any comity concerns (Doc. 58, pp. 7, 8). According to Defendants, the Court should keep this case and employ one of several case management options, such staying this case, consolidating it in full or in part with the East St. Louis case, or coordinating the two proceedings to maximize efficiency and avoid duplication of effort (Doc. 58, pp. 7–8, n.1).

The issue is whether the Court should first consider the procedural or administrative issue of how to manage duplicative class actions *or* whether it should first consider the propriety of exercising its discretion to remand this case under the comity abstention doctrine. The parties have pointed the Court to cases that deal with similar situations, and the Court has also found some others during the course of its own research. *See, e.g.*, *Washington v. Burley*, No. CIV.A. 3-12-154, 2012 WL 5289682, at *2 (S.D. Tex. Oct. 23, 2012) (deciding whether to first address a consolidation motion or a motion

seeking discretionary remand of state law claims pursuant to 28 U.S.C. § 1367(c)). The Court, however, notes there is one glaring difference in this case and the other cases it has reviewed — here, there is no motion or formal request asking this Court to consolidate, stay, or dismiss this case. In the other cases, a formal motion had been filed requesting the relief the Defendants sought. *Id.* at * 1 (concluding that the court will first consider the motion to remand and denying that motion and then considering the *motion to consolidate* and granting that motion). But here, Defendants took no action following removal to affirmatively and formally put the issue of how to manage the two duplicative cases before the Court. In fact, they specifically asked the Court to excuse them from filing anything until after the motion to remand had been ruled on (Doc. 27). And now they're asking the Court to defer ruling on the *only* issue formally presented to it—whether to remand under the *Levin* comity abstention doctrine is warranted—based on matters of hypothetical case management that Defendants have not yet addressed nor firmly committed to addressing in the future should the Court agree with them and deny the motion to remand (*see* Doc. 58). As the Court sees it, Defendants put the cart before the horse.

Furthermore, it is not manifestly evident which of the case management tactics would be the best route to take or which the parties would be most amenable to. As a result, this issue is not one that the Court is inclined to address *sua sponte* without any briefing from the parties.

Finally, Defendants assert that the duty to avoid duplicative litigation overrides comity concerns. But they do not cite to any cases that actually say as much (*see* Doc. 58).

Defendants also do not cite any cases where a federal district court found *all* of the *Levin* factors weighed in favor of abstention but the court nevertheless declined to abstain for administrative or case-management-type reasons (*see id.*). The conspicuous absence of authority on this point is important. It simply cannot be overlooked.

The Court acknowledges that remand will result in a situation where duplicative lawsuits are proceeding in state and federal court. This situation is certainly not ideal. East St. Louis voluntarily chose to submit to a federal forum to decide the same questions that the Village of Shiloh contends should not be decided by a federal court. But Defendants are not doomed to proceed simultaneously in both forums. Perhaps they will ask the state court judge to stay this case once it is remanded. Or they can move to stay the East St. Louis case that will remain in this District. *See Clark v. Lacy*, 376 F.3d 682, 685 (7th Cir. 2004) (quoting *Colo. River,* 424 U.S. at 818) ("Under the *Colorado River* abstention doctrine, a federal court may stay a suit in exceptional circumstances when there is a concurrent state proceeding and the stay would promote 'wise judicial administration.'"). Simply put, there are options that can be used to avoid duplicative efforts in the state court or in this Court.

In sum, the question of whether a court should decline federal jurisdiction and remand a case back to state court under the comity abstention doctrine is, of course, a use of the Court's discretion. However, every other court that has been asked to answer this question in nearly identical cases around the country have chosen to remand. *See supra* pp. 6-7. And in one instance, the district court's remand order was affirmed by the Seventh Circuit Court of Appeals. *Id.* Of course, this case presented a wrinkle in that a

similar lawsuit was filed as an original action in this Court and the undersigned may soon be deciding motions to dismiss in that case. *See City of East St. Louis v. Netflix, Inc., et al.*, SDIL Case No. 21-cv-561-MAB. But here, the Defendants never formally committed to moving this Court to stay this case. Nor did they formally ask the Court to consolidate or coordinate the two, or employ some other case-management tool with respect to the two cases. The Court is not a clairvoyant and this is simply not the type of issue this Court can and should address *sua sponte* without formal briefing and a full-throated discussion on the topic because the path forward is not manifestly clear. And finally, no party has pointed this Court to any authority where a federal district court found all of the *Levin* factors weighed in favor of abstention, but nevertheless declined to abstain based on case-management reasons. Accordingly, the Court must remand this case to state court.

## Conclusion

Plaintiff, Village of Shiloh's motion to remand (Doc. 45) is **GRANTED**. This case is **REMANDED** to the Circuit Court for the Twentieth Judicial Circuit, St. Clair County, Illinois.

**IT IS SO ORDERED.**

**DATED: March 24, 2022**

s/ Mark A. Beatty
**MARK A. BEATTY**
**United States Magistrate Judge**